Albert NAPIER *v.* Dr. Charles NORTHRUM
et al

78-109                                          572 S.W. 2d 153

Opinion delivered October 23, 1978
(Division I)

*Frank W. Booth,* for appellant.

*Shaw & Ledbetter; Bethell, Callaway & Robertson,* by: *Donald P. Callaway;* and *Warner & Smith,* for appellees.

GEORGE ROSE SMITH, Justice. This is an action for medical malpractice, brought by Albert Napier against Dr. Charles Northrum, an anesthesiologist, Dr. John Wideman, an orthopedic surgeon, and Sparks Regional Medical Center. At the close of the plaintiff's proof the trial judge directed a verdict in favor of all three defendants. Napier argues that submissible issues of negligence were presented and that the court should have admitted into evidence the Sparks hospital's Nursing Procedure Manual.

In 1969 Napier's right hand was severely lacerated by the fan of his car. He was eventually sent to Dr. Wideman, who advised an operation. On the night before the operation Dr. Wideman recommended a form of anesthesia known as a brachial block, to which Napier consented. During the operation, on the morning of January 6, 1970, the anesthetist's needle punctured the patient's right lung, causing a partial deflation known as pneumothorax. That condition was treated at about 8:30 that evening by Dr. Leon P. Woods, a thoracic surgeon. Both Dr. Woods and Dr. Wideman were called as witnesses by the plaintiff.

The complaint was originally filed in November, 1971, but after a voluntary nonsuit in 1976 it was refiled in August, 1977. The complaint, as abstracted, alleged that Dr. Northrum negligently punctured Napier's lung in administering the brachial block, that Dr. Northrum and Dr.

Wideman failed to warn Napier of recognized complications in this type of anesthesia, and that all three defendants failed to provide proper post-operative care, with the result that Napier suffered unnecessary pain and mental anguish for about 9 1/2 hours while his lung was collapsing.

We consider first the really basic question, whether there was a submissible issue of negligence on the part of the anesthetist. Pertinent to this question is our rule with respect to the necessity for expert testimony, which we summarized in *Graham v. Sisco*, 248 Ark. 6, 449 S.W. 2d 949 (1970):

> The necessity for the introduction of expert medical testimony in malpractice cases was exhaustively considered in *Lanier v. Trammell*, 207 Ark. 372, 180 S.W. 2d 818 (1944). There we held that expert testimony is not required when the asserted negligence lies within the comprehension of a jury of laymen, such as a surgeon's failure to sterilize his instruments or to remove a sponge from the incision before closing it. On the other hand, when the applicable standard of care is not a matter of common knowledge the jury must have the assistance of expert witnesses in coming to a conclusion upon the issue of negligence.

Dr. Woods and Dr. Wideman described the brachial block procedure. In it the anesthetist deadens the entire arm by injecting the anesthetic into the brachial complex of nerves, lying next to the first rib. The needle is inserted at the base of the neck, near the collarbone. The lung often extends above the first rib, behind it. It is impossible to tell, even by an x-ray, just how deep the brachial complex and the lung lie below the surfact, because the thickness of the overlying tissue varies. Dr. Woods testified that there is no way to prevent an occasional puncture of the lung if enough brachial blocks are performed. Dr. Wideman testified that as a surgeon he had seen probably more than 500 brachial blocks and that in more than one but less than five of them a pneumothorax developed as a result of the anesthesia.

It cannot be said that the brachial block procedure is a matter within the common knowledge of a jury of laymen. In

that situation, "the jury may not speculate as to the propriety of the standards testified to by experts, nor draw on their own personal knowledge in determining the question." AMI Civil 2d, 1051, Comment (1974). The expert testimony does not prove negligence on the part of the anesthetist. To the contrary, Dr. Woods testified that in his opinion Mr. Napier received correct care throughout his stay at the hospital and that there was no wrongdoing on the part of any doctor or anyone assiciated with the hospital. We can find no testimony that would have enabled the jury to make a finding of negligence with respect to the administration of the brachial block.

A second allegation is that Dr. Wideman and Dr. Northrum not only failed to warn Napier of recognized complications in the brachial block anesthesia but also insisted on that type of anesthetic. As far as the insistence goes, Napier admits that he consented to the procedure. The jury certainly would have found that Napier was not told that there was about a one percent chance that a lung puncture and pneumothorax might occur. The trouble is, there is no testimony about the alternative forms of anesthesia. Dr. Wideman said he recommends the brachial block for this reason: "The biggest thing about the brachial block is in safety. It is relatively safe, as to any other type of anesthetic you give him." There was no testimony that would have permitted the jury to weigh the various types of anesthesia to determine if a warning should have been given. Thus the jury was not in a position to find that the doctors were negligent in failing to give specific information about the possibility that a lung puncture might occur. We should add that the general tenor of the medical testimony in the case is to the effect that a pneumothorax such as Napier suffered is not, when properly treated, a serious injury or one that results in any damage to the affected lung. There is no complaint about the treatment of the pneumothorax by Dr. Woods, who was not named as a defendant in the case.

Finally, there is the assertion that the defendants' post-operative treatment of the pneumothroax was negligently delayed for 9 1/2 hours, during which Napier suffered unnecessary pain. As to Dr. Northrum, the anesthesiologist, we

find no contention in the appellant's brief that he was responsible for post-operative care. As to Dr. Wideman, he was performing other surgery when Napier was returned to his hospital room and the pneumothroax developed gradually and became apparent. Obviously the scheduling of additional surgery on the same morning was not negligence. When Dr. Wideman, an orthopedist, was informed that Napier was experiencing pain and shortness of breath, he directed that the appropriate specialist be called into the case. There is really no serious argument that Dr. Wideman was negligent with respect to the patient's post-operative care.

There remains the charge that the Sparks hospital's nurses were at fault in not diagnosing more promptly the possibility that Napier had suffered a pneumothroax and required the immediate attention of a thoracic specialist, such as Dr. Woods. Here the implied premise is that even though some shortness of breath and some pain were unavoidable consequences of the lung puncture and ensuing pneumothorax, the period of suffering would have been reduced had the nurses acted more efficiently.

Here, again, the issue is one upon which something in the nature of expert proof is required. That is, a jury cannot decide of its own knowledge just when the nurses should have realized what might be happening. To fill that gap the plaintiff sought to introduce the hospital's Nursing Procedure Manual. The court ruled that there had been no showing that any of the standards had been violated and that therefore the proffered manual was irrelevant.

In the transcript the bulky single-spaced manual comprises about 31 pages. All three appellees, in their separate briefs, justifiably complain that no part of the manual has been abstracted by the appellant. Instead, the appellant summarizes and discusses in his brief certain parts of the manual that he considers to be pertinent. Such a discussion does not comply with Rule 9(d), which requires an impartial abstract of such material matters in the record as are necessary to an understanding of the questions presented. Without an impar-

tial abstract of all pertinent parts of the manual we cannot say, absent any other proof, that the nurses were at fault.

Affirmed.

We agree. HARRIS, C.J., and HOLT and HOWARD, JJ.