Drew J. KIRBENS, M.D., Appellant (Petitioner),

v.

WYOMING STATE BOARD OF MEDI-CINE; Robert L. McGuire, M.D., in his official capacity as a Board member; and Duane E. Abels, D.O., in his official capacity as a Board member, Appellees (Respondents).

No. 98–233.

Supreme Court of Wyoming.

Dec. 6, 1999.

Representing Appellant: Eldon E. Silverman of Preeo, Silverman & Green, P.C., Denver, Colorado.

Representing Appellees: Don W. Riske, Special Assistant Attorney General, Cheyenne, Wyoming.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and HILL, JJ.

GOLDEN, Justice.

This appeal presents novel issues as to whether state and federal statutes offer protection to an impaired physician facing disciplinary action for misconduct that he claims resulted from disability. The Wyoming Board of Medicine (Board) revoked Appellant Drew J. Kirbens' medical license following a contested case hearing. Although he admits that he poses a significant threat to the safety of the public, he appeals the decision to revoke, asserting that his disability entitled him to voluntarily relinquish his license and seek treatment in an appropriate program.

Determining that neither state nor federal statute protects Kirbens from disciplinary action upon an admission that he poses a significant threat to the safety of the public, we affirm the decision of the Board.

## ISSUES

Kirbens presents the following issues for our review:

1. Does the plain meaning of W.S. § 33–26–404(a) and (b) compel the Board to accept the license of a medical doctor who voluntarily relinquishes it and not engage in a punitive course of action?

2. Does the Board's action in requiring a contested hearing and levying penalties violate the Americans with Disabilities Act?

3. In any event, is the Board's finding of willfulness supported by the record?

4. Did the Board violate its own rules and regulations by publicizing its Findings and Conclusions?

The Board rephrases the issues as:

1. Whether the Wyoming Board of Medicine is required to accept the voluntary

relinquishment of a license when the licensee is the subject of a pending disciplinary proceeding.

2. Whether the disciplinary proceeding before the Wyoming Board of Medicine against Appellant violated the Americans with Disabilities Act.

3. Whether the Findings of Fact, Conclusions of Law and Order issued by the Wyoming Board of Medicine in this case are supported by substantial evidence found in the record of the agency proceeding.

4. Whether the Wyoming Board of Medicine violated its own rules by publicly disclosing the Findings of Fact, Conclusions of Law and Order issued by it in this case.

## FACTS

As Kirbens was a licensed Wyoming medical doctor, his license was subject to the provisions of the Wyoming Medical Practice Act and the Board's Rules and Procedure. On January 2, 1997, representatives of the Board filed a first complaint against Kirbens, notifying him that it would hold a contested case hearing to consider disciplinary action. As grounds for disciplinary action, the complaint asserted that Kirbens' negligence and malpractice violated statutory prohibitions against willful and consistent utilization of medical service or treatment which was inappropriate or unnecessary pursuant to Wyo. Stat. Ann. § 33–26–402(a)(xxii) and Wyo. Stat. Ann. § 33–26–402(a)(xviii). An amended complaint was then filed on February 27, 1997, asserting that Ivinson Memorial Hospital in Laramie, Wyoming, had taken an adverse action against Kirbens' privileges as of January 14, 1997, by suspending him for an indefinite period, which is also statutory grounds for discipline, pursuant to Wyo. Stat. Ann. § 33–26–402(a)(xxvi). A second amended complaint was filed asserting other violations of the Act arising out of a surgery, on or about June 9, 1997, at Memorial Hospital of Converse County, in which a patient subsequently died.

In July of 1997, Kirbens agreed to temporary restrictions of his practice, including a prohibition from surgical or invasive procedures. A third amended complaint was filed

by representatives of the Board on October 20, 1997, asserting the same violations but invoking the names of patients in addition to the ones previously listed and asserting a stipulated suspension from Memorial Hospital of Converse County.

Following the filing of the third amended complaint, the hearing examiner continued the hearing until January 8, 1998. At that time, the hearing examiner approved the continued restrictions on Kirbens' practice until final disposition of the complaint. In early November, 1997, Kirbens attended a Professional Assessment Program at Abbott Northwestern Hospital in Minneapolis, Minnesota, for alcohol and drug screening. Those results proved negative, and the program recommended that Kirbens enter a Physicians in Crisis Program at the Menninger Clinic in Topeka, Kansas. He did so on December 15, 1997. In a letter dated December 31, 1997, Dr. Richard R. Irons stated that he had diagnosed Kirbens with bipolar affective disorder Type II and narcissistic personality disorder and was treating him for those conditions.

On January 6, 1998, Kirbens claimed that the applicable Wyoming statute authorized voluntary relinquishment and requested the Board to allow him to relinquish his license, or alternatively, to agree to temporary suspension. He also filed a motion to stay or continue the contested hearing, contending that Wyoming statutes and the Americans with Disabilities Act (ADA) permitted a stay. Kirbens' motions asserted that he was an impaired physician as defined under Wyo. Stat. Ann. § 33–26–102(a)(vii) because he could not practice medicine with reasonable skill and safety due to mental illness or physical illness. He claimed that he was a qualified individual with a disability entitled to protection under the ADA and its applicable regulations. The hearing examiner presented these motions for consideration by the Board. At the hearing, Kirbens stipulated to the Board's jurisdiction, admitted wrongful acts that he claimed were not intentional or willful and requested the Board's help with his physical and mental impairment.

At the hearing, Kirbens attempted to explore whether the Board's conducting a contested case hearing would violate the ADA. He questioned the Board's executive secretary to ascertain whether the Board permitted physicians impaired by substance abuse to voluntarily relinquish their licenses and receive treatment from a Board program. He succeeded in establishing that a substance abuse treatment program existed, and when he was not allowed to continue, made an offer of proof that Wyoming did not provide similar treatment assistance for physicians with physical or mental illness. Dr. Irons testified that Kirbens was an impaired and disabled physician who, because of his disability, posed a significant risk to the health or safety of others and recommended that Kirbens not practice medicine in any form at this time. In Dr. Irons' medical opinion, Kirbens was competent to decide to relinquish his license to the Board. Kirbens' counsel then argued that Wyoming and federal law required the Board to accept the relinquishment of his license. The Board's counsel argued that a contested case hearing should be held to establish all of the facts in the event of a request for reinstatement. The hearing examiner reserved decision on the motion for relinquishment and held the contested case hearing.

The Board issued an order denying the stay and request for relinquishment on the grounds that no evidence showed Kirbens was impaired at the time of the acts that were the subject of the complaint; the request was not timely; and that Kirbens was not covered by the ADA. The Board revoked Kirbens' medical license and ordered he pay a civil penalty of $5,000.00. Kirbens filed a petition for judicial review on both of these orders, and the district court certified the case to this Court. Kirbens also asserted that the Board had published its findings of fact and conclusions of law in violation of Wyo. Stat. Ann. § 33–26–408(c). The district court issued an order permitting all records except the final order be filed under seal.

## DISCUSSION

### Standard of Review

Wyoming's Medical Practice Act (Act) empowers the Board to govern the practice of medicine in Wyoming and discipline its physicians and surgeons. Wyo. Stat. Ann. § 33–26–101 through § 410 (LEXIS 1999). The Act provides for judicial review of the actions of the Board under the Wyoming Administrative Procedure Act. Wyo. Stat. Ann. § 33–26–407 (LEXIS 1999). We review its actions under Wyo. Stat. Ann. 16–3–114(c) (LEXIS 1999):

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

### Right of Relinquishment

Kirbens contends that Wyoming statute compels the Board to accept his voluntary relinquishment of his medical license and prohibits a hearing when a license is voluntarily relinquished. He asserts that the Board's refusing to accept the voluntary relinquishment of his license and conducting the contested case hearing was contrary to

law. The applicable statute, Wyo. Stat. Ann. § 33–26–404(a) and (b) (LEXIS 1999), states:

(a) A licensee **may request** the Board, in writing, to accept the voluntary relinquishment, restriction or suspension of his license. The Board **may accept** the relinquished license, grant the request for restriction or suspension, attach conditions to the license or waive the commencement of any proceedings under this article. Removal of a voluntary relinquishment, restriction or suspension is subject to the procedure for reinstatement of a license as provided in this article.

(b) Unless the licensee has voluntarily relinquished or restricted his license, the Board **shall** conduct any proceeding to deny, refuse to renew or reinstate, revoke, restrict or suspend a license on the grounds that a licensee is impaired or has engaged in errant conduct as a contested case under the Wyoming Administrative Procedure Act.

(emphasis added). The Board refers us to the discretionary language used in the statute and its discretionary power to accept or reject a relinquishment found in the Rules of Practice and Procedure for Disciplinary Complaints Against Physicians of the Board at Chapter 4, Section 4(h).

An issue of statutory interpretation presents a question of law. *Butts v. Wyoming State Bd. of Architects,* 911 P.2d 1062, 1065 (Wyo.1996); *Parker Land & Cattle Co. v. Wyo. Game and Fish Comm'n,* 845 P.2d 1040, 1042 (Wyo.1993). In interpreting statutes, we primarily determine the legislature's intent. *State ex rel. Motor Vehicle Div. v. Holtz,* 674 P.2d 732, 736 (Wyo.1983). If the language is sufficiently clear, we do not resort to rules of construction. *Id.* We apply our general rule that we look to the ordinary and obvious meaning of a statute when the language is unambiguous. *Parker Land,* 845 P.2d at 1042.

Plainly, in stating that a licensee **may request** the Board to accept his voluntary relinquishment, this statutory language authorizes such a procedure; yet, providing that the Board **may accept** that relinquishment grants the Board the discretionary authority to accept or reject it. In the event that a voluntary relinquishment is neither made nor accepted, the statute directs the Board that it **shall** proceed with the particular disciplinary proceeding as a contested case hearing. Acting within its statutory discretion to reject Kirbens' request to voluntarily relinquish his license, the Board was statutorily required to hold a contested case hearing. The Board's order denying the request for relinquishment and stay of contested case proceedings was not contrary to law.

*Americans With Disabilities Act*

*1. Applicability in Disciplinary Proceedings.*

The Wyoming Medical Practice Act defines an "impaired" physician as:

(vii) "Impaired" means a person who cannot practice medicine with reasonable skill and safety to patients by reason of one (1) or more of the following:

(A) Medical incompetence;

(B) Mental illness;

(C) Physical illness, including but not limited to deterioration through the aging process or loss of motor skill; . . . .

Wyo. Stat. Ann. § 33–26–102(a)(vii) (LEXIS 1999). Kirbens states in his brief "he is an impaired physician, and thus, his continued practice of medicine would constitute a significant risk to the health or safety of the public." He contends, however, that the ADA required the Board to permit him relief under state statutes assisting physically and mentally impaired physicians. He relies upon the statute permitting voluntary relinquishment of his license, or, alternatively, Wyo. Stat. Ann. § 33–26–202(a)(xii), mandating that the Board provide a program to assist physically and mentally impaired physicians. He directs our attention to Wyo. Stat. Ann. § 33–26–202(b)(ix), obliging the Board to comply with all federal law. Evidentiary rulings at the hearing prevented him from establishing the applicability of the ADA, although his offer of proof at the hearing established that the sole state-sponsored physicians' assistance program exists for physicians impaired by substance abuse. He requests that the Board's order be set aside

until he determines whether any discipline against him (other than voluntary relinquishment of his license) is discriminatory under the ADA. Precisely, he contends that the ADA does not permit the Board to treat him differently from doctors with an alcohol or drug dependence issue for whom the Board may have established a state sponsored rehabilitative program as provided for in Wyo. Stat. Ann. § 33–26–202(b)(xii).

The Board contends that the ADA does not protect a physician who is not a "qualified individual with a disability" under the ADA. It claims a physician who poses a significant risk to the health or safety of others by virtue of his disability is not "qualified." Because Kirbens' witness, Dr. Irons, testified that Kirbens did pose a significant risk to the health and safety of others because of his disability, the Board asserts that Kirbens is not qualified under the ADA, the ADA does not protect him, and the ADA does not apply to Board proceedings and final orders.

Wyo. Stat. Ann. § 33–26–202 (LEXIS 1999) states in relevant part:

(a) The board shall pass upon the qualifications and determine the fitness of all persons desiring to practice medicine in this state.

(b) The board is empowered and directed to:

(i) Grant, refuse to grant, suspend, restrict, revoke, reinstate or renew licenses to practice medicine;

(ii) Investigate allegations and take disciplinary action on the following grounds:

(A) A licensee is impaired or has engaged in errant conduct;

(B) A person has violated an applicable provision of this chapter or the board's regulations.

(iii) Conduct informal interviews and contested case proceedings;

\* \* \*

(ix) **Comply with all applicable federal law;**

\* \* \*

(xii) **Participate in and contribute to a program to assist in the return to practice of licensees who are physically or mentally impaired;**

(xiii) Take all reasonable action, including the promulgation of rules and regulations, necessary to enforce this chapter.

(emphasis added). Kirbens does not contend that section (xii) in and of itself entitles him to avoid revocation of his license and be placed in a treatment program. Rather, he argues that because a public entity program apparently exists for disabled physicians, the ADA requires that he be treated similarly to other disabled physicians.

Kirbens asserts that the applicable federal law is Title II of the ADA and those regulations implementing its provisions. Title II is one of five titles contained in the ADA: Employment (Title I), Public Services (Title II), Public Accommodations and Services Operated by Private Entities (Title III), Telecommunications (Title IV), and Miscellaneous Provisions (Title V). *Zimmerman v. Oregon Dept. of Justice,* 170 F.3d 1169, 1172 (9th Cir.1999) (citing Americans with Disabilities Act of 1990, Publ.L. No. 101–336, 104 Stat. 327, 327–28 (1990). As a whole, Congress intended that the ADA "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." *Olmstead v. L.C.,* 527 U.S. 581, 119 S.Ct. 2176, 2182, 144 L.Ed.2d 540 (1999) (quoting 42 U.S.C. § 12101(b)(1)) (1994)). Bipolar disorder is a disability under the ADA. *The Florida Bar v. Clement,* 662 So.2d 690, 699 (Fla.1995), *cert. denied,* 517 U.S. 1210, 116 S.Ct. 1829, 134 L.Ed.2d 933 (1996). The Title II provision at issue states:

[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132 (1994). Title II defines "public entity" as any state or local government and any department, agency, or special purpose district. 42 U.S.C. §§ 12131(1)(A),

(B) (1994). At the hearing, the Board conceded that it is a public agency within this definition. The ADA defines "qualified individual with a disability" as:

an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2) (1994).

Kirbens directs us to an accompanying regulation promulgated under the ADA, providing

[a] public entity may not administer a licensing or certification program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability, nor may a public entity establish requirements for the programs or activities of licensees or certified entities that subject qualified individuals with disabilities to discrimination on the basis of disability.

28 C.F.R. § 35.130(b)(6) (1999). Virginia interprets this provision as specifically prohibiting public entities from acting discriminatorily in administering licensing programs. *Clark v. Virginia Bd. of Bar Examiners,* 880 F.Supp. 430, 442 (E.D.Va.1995). Kirbens asserts this regulation prohibits the Board from assisting substance dependent physicians while denying assistance to him for his particular disability, and discriminatorily refusing to allow him to voluntarily relinquish his license.

Maintaining its position that Kirbens is not a qualified individual under ADA, the Board relies upon *Alexander v. Margolis,* 921 F.Supp. 482 (W.D.Mich.1995), *affirmed on appeal,* 98 F.3d 1341 (6th Cir.1996), and quotes the following passage:

Considering the text of section 12132(2), it is questionable whether the Board's duty to license physicians can be characterized

as a "service" being denied to plaintiff or whether the Board's refusal to reinstate his license denies him participation in "programs or activities provided" by a state entity. The Board of Medicine is, if anything, a service, program or activity provided for the public's benefit and safety, not for the benefit of any given individual who does not meet the state's requirements for practicing medicine.

In any event, plaintiff is not a "qualified individual with a disability" under the ADA. The very nature of the police powers exercised by state boards of medicine require[s] the state to discriminate on the basis of, among other considerations, a mental condition harmful to the public's safety. By the very nature of the practice of medicine, given the physician's necessary independence to "practice" his art, no reasonable modification can be made to a policy of restricting medical practice to those without evidence of mental disabilities.

*Id.* at 488.

The Board directs our attention to *Doe v. Univ. of Maryland Medical System Corp.,* 50 F.3d 1261 (4th Cir.1995),[1] which held:

[A] hospital does not violate § 504 of the Rehabilitation Act or Title II of the ADA when it terminates an HIV-positive neurosurgical resident based upon the risk of transmission of the disease during performance of exposure-prone procedures. Such individuals pose a significant risk to the health or safety of their patients that cannot be eliminated by reasonable accommodation, and therefore are not otherwise qualified within the meaning of the Rehabilitation Act and the ADA.

*Id.* at 1267. Kirbens distinguishes *Doe* as a Title I employment termination case inapplicable to a request of voluntary relinquishment on Title II disability grounds. We agree that Kirbens' contentions must be examined under Title II of the ADA which is applicable to public entities, rather than Title I, which is applicable to employment. Nevertheless, we find that the federal regulations

---

**1.** Without analysis, *Doe* assumed that Title II of the ADA applied in the public employment context. Since its publication, one court has disa-

greed that Title II applies to public employment. *Zimmerman,* 170 F.3d at 1183.

promulgated under the ADA support the Board's position.

"Because Congress explicitly authorized the Attorney General to implement Title II through these regulations, see 42 U.S.C. § 12134, they 'must be given legislative and hence controlling weight unless they are arbitrary, capricious, or plainly contrary to the statute.'" *Medical Society of New Jersey v. Jacobs,* 1993 WL 413016 at *5 (D.N.J. Oct.5, 1993) (quoting *United States v. Morton,* 467 U.S. 822, 834, 104 S.Ct. 2769, 81 L.Ed.2d 680 (1984)). The federal regulations discuss the relationship between safety questions and protecting disabled individuals under the ADA in this way:

> Where questions of safety are involved, the principles established in § 36.208 of the Department's regulation implementing title III of the ADA, to be codified at 28 CFR, part 36, will be applicable. That section implements section 302(b)(3) of the Act, which provides that a public accommodation is not required to permit an individual to participate in or benefit from the goods, services, facilities, privileges, advantages and accommodations of the public accommodation, if that individual poses a direct threat to the health or safety of others.
>
> A "direct threat" is a significant risk to the health or safety of others that cannot be eliminated by a modification of policies, practices, or procedures, or by the provision of auxiliary aids or services.... **Although persons with disabilities are generally entitled to the protection of this part, a person who poses a significant risk to others will not be "qualified," if reasonable modifications to the public entity's policies, practices, or procedures will not eliminate that risk.**

28 C.F.R. pt. 35, App. A at 481 (1999) (emphasis added).

■ The regulatory language establishes that the ADA will not protect a disabled individual whose disability constitutes a direct safety threat to the public. Other jurisdictions have determined that the ADA does not prevent disciplining disabled attorneys whose misconduct substantially harmed or threatened their clients. *State ex rel.*

*Oklahoma Bar Ass'n v. Busch,* 919 P.2d 1114, 1119–20 (Okla.1996); *Matter of Wolfgram,* 1995 WL 506002 at *7 (Cal.Bar Ct. Aug.22, 1995). We agree that the appropriate rule in Kirbens' case should be that the ADA will not protect him from Board disciplinary proceedings if his conduct significantly risks the health or safety of others.

■ Under a standard of clear and convincing evidence, the Board concluded that Kirbens had violated several provisions of the Act by performing inappropriate or unnecessary surgeries upon several patients. Kirbens' treating physician, Dr. Irons, testified that in his opinion, Kirbens cannot practice medicine with reasonable skill and safety and would pose a significant risk to the health and safety of others by virtue of his disability. Based on this opinion, the Board concluded that a physician cannot be "qualified" under the ADA if he poses a significant risk to the health or safety of others by virtue of his disability. From hospital records of adverse actions against Kirbens, the Board concluded two hospitals suspended his privileges because of either possible incompetence or misconduct. The Board established that Kirbens cannot practice medicine without substantial harm or threat to his patients. Kirbens does not challenge either these findings or conclusions. We agree that the ADA does not consider Kirbens as a "qualified individual with a disability." We hold that the ADA did not prevent the Board from revoking Kirbens' medical license.

*2. Limitation of Disciplinary Proceedings.*

■ Despite the Board's finding that Kirbens had significantly harmed patients, Kirbens maintains that, under the ADA, his disability entitled him to avoid revocation by voluntarily relinquishing his license and receiving treatment under a state sponsored rehabilitation program. This assertion is questionable because in its individualized assessment upon his motion requesting that he be allowed to voluntarily relinquish his license, the Board determined that Kirbens' acts were not shown to have been caused by his disability and that he was not otherwise protected by the ADA. Furthermore, Kir-

bens does not refer us to any provision of the ADA which would require the Board to make the requested accommodation. *See Wolfgram,* at *7. Assuming without deciding that the ADA applies, the Colorado Supreme Court has ruled that the ADA did not prevent it from exercising discretion and rejecting the proposed disciplinary measures of an attorney found to have committed serious misconduct and harm. *People v. Reynolds,* 933 P.2d 1295, 1305 (Colo.1997). We agree that the ADA defers to the licensing authority, and uphold the exercise of the Board's discretion in rejecting Kirbens' proposed disciplinary measures. *See Theriault v. Flynn,* 162 F.3d 46, 50 (1st Cir.1998). Under these circumstances, we hold that the Board is not acting discriminatorily by refusing to allow Kirbens to voluntarily relinquish his license or by not placing him in a state-sponsored rehabilitation program.

*Finding of Willfulness*

██ The Board decided that Kirbens violated Wyo. Stat. Ann. § 33–26–402(a)(xviii) by willful and consistent utilization of medical service or treatment which is inappropriate or unnecessary. Kirbens contends the record does not show by clear and convincing evidence that his actions constituted willful misconduct. He contends the statutory term "willful" is to be defined as "willful misconduct." He provides a definition of willful misconduct from the criminal case of *Norfolk v. State,* 360 P.2d 605, 607 (Wyo.1961):

> Willful misconduct implies at least the intentional doing of something either with a knowledge that serious injury is a probable (as distinguished from a possible) result, or the intentional doing of an act with a wanton and reckless disregard of its possible result.

(emphasis omitted.) The Board does not contest the application of this definition, relying instead on those portions of the record supporting its findings and conclusions that Kirbens' actions were not accidental, and were, therefore, willful actions in violation of the statute. We apply our general rule that we look to the ordinary and obvious meaning of a statute when the language is unambiguous. *Parker Land,* 845 P.2d at 1042.

██ The term "willful misconduct" as used in the criminal context generally means an act done with a bad purpose. Blacks Law Dictionary 1600 (6th ed.1990). In the civil context, it "often denotes an act which is intentional, or knowing, or voluntary as distinguished from accidental." *Id.* In the professional licensing context, the Board is not required to prove patient injury to establish willful acts nor should it be defined as in tort. *See Medical Licensing Bd. of Indiana v. Ward.,* 449 N.E.2d 1129, 1141 (Ind.App. 4 Dist.1983); *Dixon v. State Bd. of Optometric Examiners,* 39 Colo.App. 200, 565 P.2d 960, 963 (1977). Because it is inappropriate to apply definitions from either a criminal or tort context, we review the Board's finding on the issue of "willful" to determine if the evidence establishes intentional, or knowing, or voluntary acts as distinguished from accidental.

> [A]gency action will be set aside if it is not supported by substantial evidence. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the conclusions of the agency. The entire record is to be examined to determine if there is substantial evidence to support the agency's findings. The reviewing court does not substitute its judgment for that of the agency with respect to findings of fact if they are supported by substantial evidence. When the case comes before the supreme court, the findings of the agency are reviewed without according any special deference to the decision of the district court. The burden is assigned to the party challenging the sufficiency of the evidence to demonstrate that the Board's decision is not supported by substantial evidence.

*Devous v. Wyoming State Bd. of Medical Examiners,* 845 P.2d 408, 414 (Wyo.1993) (citations omitted).

██ The Board considered expert testimony, CT scans, medical records, and the April 1997 Assessment Report of the Colorado Personalized Education for Physicians Program in its review of the treatment provided to three patients. In its review, the experts testified that the records showed that Kirbens failed to properly document his

diagnosis of and medical justification for the surgeries. Each patient's medical records and CT scans did not indicate sinus disease to the extent required which would justify surgery. The experts offered opinions that the CT scans and medical records indicated deficient medical decision making. One expert testified that of ten patients who had come to see him for a second opinion after Kirbens had recommended they undergo surgery, only one demonstrated a physical condition warranting surgery. The third expert who reviewed the same materials expressed the opinion that Kirbens had not performed unnecessary surgeries and that his conduct and medical judgment were within the applicable standard of care. That same expert, however, described the medical records as "sketchy" and "inadequate" and he was unable to tell from the records what Kirbens' "thought processes were," Kirbens' "judgment was not reflected in the notes;" and Kirbens "goes straight to a conclusion without the supportive history." From the medical records alone, the expert stated that it would be difficult to justify the surgery performed on one patient. From these facts, the Board concluded there was clear and convincing evidence that Kirbens' conduct exhibited willful and consistent utilization of medical services that were inappropriate and unnecessary. We find the Board's conclusion is justified from the underlying facts and affirm the decision that Kirbens violated this portion of the statute.

*Confidentiality*

■ In his final contention, Kirbens argues that the Board improperly disclosed the findings of fact and conclusions of law along with the final order in violation of Wyo. Stat. Ann. § 33–26–408(c). The Board contends that these three components comprise an integrated document that is considered a final order and required to be published under its rules.

Wyo. Stat. Ann. § 33–26–408(c) (LEXIS 1999) states:

All board records except final orders are not subject to public disclosure or discovery and are not admissible in any non-board proceeding except when necessary

for further board action or upon judicial review of a board order.

The Act does not define the statutory terms "Board records" or "final orders." In another section of the Act, the Board is instructed to enter its order and findings pursuant to the Wyoming Administrative Procedure Act when it refuses to renew or reinstate, revokes, restricts or suspends a license. Wyo. Stat. Ann. § 33–26–405(a) (LEXIS 1999). Similarly, the section governing reinstatement of licenses directs the Board to issue "specific findings of facts, conclusions of law and a final order." Wyo. Stat. Ann. § 33–26–406(d) (LEXIS 1999). The intent apparent from the various sections of the Act supports the Board's contention that it may consider the findings of fact and conclusions of law as well as an order of the action taken in a particular matter to be the final order. Patient confidentiality was appropriately protected within these documents, and we find the Board did not act in violation of the statute by publishing its findings of facts and conclusions of law as well as the action taken against Kirbens.

We affirm the order revoking Kirbens' medical license.