**COLORADO STATE BOARD OF MEDICAL EXAMINERS,**
Appellee,

v.

**Gary A. OGIN, M.D., Appellant.**

No. 01CA1508.

Colorado Court of Appeals,
Div. I.

Sept. 12, 2002.

Ken Salazar, Attorney General, Cheryl K. Hara, Assistant Attorney General, Claudia Brett Goldin, Assistant Attorney General, Denver, Colorado, for Appellee.

Sherman & Howard, LLC, Frederick Y. Yu, Claire E. Douthit, Denver, Colorado, for Appellant.

Opinion by Judge CASEBOLT.

Respondent, Gary A. Ogin, M.D., appeals the order of the Colorado State Board of Medical Examiners that revoked his license to practice medicine. We affirm.

Respondent practiced as an anesthesiologist in the administration of surgical anesthesia and in treating patients for alleviation of pain through the administration of medication, a practice known as interventional pain management (IPM). Respondent suffers from a sleep disorder, known as idiopathic central nervous system hypersomnia, which causes him to become drowsy and fall asleep in environments of low stimulation. Individuals with that disorder also have trouble maintaining wakefulness during the daytime.

An inquiry panel of the board brought disciplinary charges against respondent based on several instances of unprofessional conduct, in addition to the charge that his disability rendered him unsafe to practice medicine. The charges were supported by evidence that, on a number of occasions, respondent fell asleep while administering anesthesia to patients during surgery. Over the same period, respondent accidentally caused three pneumothoraces—a puncture of the chest wall that can lead to lung collapse—while administering IPM medication. Respondent also engaged in sexual contact with a patient while she was anesthetized during knee surgery.

An administrative law judge (ALJ), sitting in lieu of a hearings panel of the board, held an evidentiary hearing on the charges and issued an initial decision finding that the inquiry panel had proved all of the charges against respondent and that he was unsafe to practice anesthesiology, either in surgical practice or in IPM. As sanctions, the ALJ adopted the inquiry panel's recommendations and restricted respondent's practice to IPM with strict conditions of peer monitoring and treatment for his illness.

Respondent filed exceptions to the ALJ's decision. A separate hearings panel of the board then reviewed the ALJ's decision and heard additional argument from respondent and counsel for the inquiry panel. The hearings panel adopted all of the ALJ's findings and conclusions, but set aside the sanctions. Instead, the panel revoked respondent's license to practice medicine. This appeal followed.

## I.

Respondent asserts that the board's revocation of his license for conduct resulting from his sleep disorder violates the Americans with Disabilities Act (ADA). We disagree.

Title II of the ADA provides that no otherwise qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. 42 U.S.C. § 12132 (1994); see Community Hosp. v. Fail, 969 P.2d 667 (Colo.1998); Colo. State Bd. of Dental Exam'rs v. Major, 996 P.2d 246 (Colo.App.1999).

■ The parties agree, and we concur, that as a "public entity" within the meaning of 42 U.S.C. § 12131(1)(B) (1994), the board and its licensing activities are subject to ADA Title II. See 28 C.F.R. § 35.130(b)(6) (public entity may not administer a licensing program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability); Hason v. Med. Bd., 279 F.3d 1167 (9th Cir.2002)(medical licensing falls within scope of ADA Title II); see also People v. Reynolds, 933 P.2d 1295 (Colo.1997)(ADA applicable to attorney discipline proceedings); Colo. State Bd. of Dental Exam'rs v. Major, supra (ADA applicable to dentist disciplinary proceedings).

The ADA was enacted not only to remedy discrimination in the form of intentional exclusion, but also to mandate reasonable modifications to existing policies or otherwise to reasonably accommodate individuals with disabilities. 42 U.S.C. § 12101(a)(5); PGA Tour, Inc. v. Martin, 532 U.S. 661, 121 S.Ct. 1879, 149 L.Ed.2d 904 (2001); Thompson v. Colorado, 278 F.3d 1020 (10th Cir.2001)(Title II's primary focus is to remedy the failure of public entities to make reasonable accommodations for persons with disabilities).

■ Accordingly, the ADA imposes the affirmative duty to attempt reasonable accommodations for qualified individuals with disabilities. Washington v. Indiana High Sch. Athletic Ass'n, 181 F.3d 840 (7th Cir.1999)(failure to provide reasonable accommodation is actionable discrimination under Title II). "Qualified individuals" are defined as those individuals with disabilities who can meet a public entity's essential eligibility requirements if provided reasonable accommodation. 28 C.F.R. § 35.104; Community Hosp. v. Fail, supra (ADA Title I employment action).

■ What constitutes reasonable accommodation requires an individualized assessment. Wong v. Regents of the Univ. of Calif., 192 F.3d 807 (9th Cir.1999). The duty to make reasonable accommodation does not require a public entity to fundamentally alter the nature of the service it provides. 42 U.S.C. § 12131(2); 28 C.F.R. § 35.130(b)(7); Thompson v. Colorado, supra. And, the ADA does not prevent professional licensing agencies from imposing discipline if the offender is not a qualified individual with a disability. People v. Reynolds, supra; Colo. State Bd. of Dental Exam'rs v. Major, supra.

■ Likewise, the ADA does not protect an individual with a disability who, by virtue of the disability, is a direct threat to public safety. Kirbens v. Wyo. State Bd. of Med., 992 P.2d 1056 (Wyo.1999). A person who poses a significant risk to public safety is not a qualified individual with a disability if reasonable modifications to the public entity's policies, practices, or procedures will not eliminate the risk. 28 C.F.R. pt. 35, app. A at 481; Kirbens v. Wyo. State Bd. of Med., supra.

## A.

■ The ALJ found that respondent's sleep disorder is a disability under the ADA and that the acts constituting unprofessional conduct (excepting the sexual misconduct) resulted from his disability. The ALJ also found that respondent poses a significant risk to his patients' safety because of his disability and that no reasonable accommodation could be made that would permit respondent to practice medicine safely. Accordingly, the ALJ found that respondent is not a qualified individual with a disability. The board adopted all of these findings and conclusions.

The board's conclusion that no reasonable accommodation can be made for respondent's disability is a finding of ultimate fact that we must uphold if it has a reasonable basis in law and is supported by substantial evidence in the record. *See Colo. State Bd. of Dental Exam'rs v. Major, supra.* Substantial evidence is probative, credible, and competent evidence that warrants a reasonable belief in the existence of a fact without regard to contradictory evidence or inference. *Colo. State Bd. of Med. Exam'rs v. Davis,* 893 P.2d 1365 (Colo.App.1995).

Substantial evidence in the record supports the board's decision that no reasonable accommodation could be made that would permit respondent to practice IPM or surgical anesthesia while ensuring patient safety. *See People v. Reynolds, supra* (concluding that accommodation proposed by attorney would not safeguard the public interest); *see also Alexander v. Margolis,* 921 F.Supp. 482 (W.D.Mich.1995)(no reasonable modification could be made to regulations restricting medical practice); *State ex rel. Oklahoma Bar Ass'n v. Busch,* 919 P.2d 1114 (Okla.1996); *Kirbens v. Wyo. State Bd. of Med., supra.*

The board found, with evidentiary support, that:

> In this case, the fact[s] proven at hearing established that with or without reasonable accommodation respondent cannot practice anesthesiology or interventional pain management without risk of injury or death to his patient. The evidence showed that respondent suffers from a lifelong condition for which there is no cure and uncertain remedial measure[s] which can be taken to prevent its symptoms. With or without monitors and medications, respondent falls asleep during surgical procedures and has a higher inciden[ce] of pneumothoraces during interventional pain management procedures. The evidence further established that no medication was effective in insuring that respondent would not fall asleep. Even more important, since respondent was inclined to self medicate and alter dosages, it is not possible to monitor respondent's response to medications in order to find medication which reliably works to keep respondent awake. There-

fore, respondent is not a qualified person with a disability entitled to the protections of the ADA.

The board also found, again with record support, that certain aspects of respondent's condition can escape detection by others even under close monitoring, that respondent is often unaware of his lapses of consciousness, and that he had a history of denial, a lack of self-awareness, and significant medical non-compliance with respect to his sleep disorder, all of which limit treatment.

This evidence, as well as the documented instances in which respondent's disability resulted in substandard care while practicing both surgical anesthesia and IPM, supports the conclusion that no reasonable accommodation could eliminate the risk to patient safety posed by respondent's disability. *See Florida Bar v. Clement,* 662 So.2d 690 (Fla. 1995)(where nothing can prevent repetition of the misconduct, no reasonable accommodation is possible that will protect the interest guarded by the licensing authority, and the ADA does not impair the agency's ability to impose discipline).

Because these findings and conclusions have a reasonable basis in law and substantial evidentiary support, we must uphold them on appeal.

### B.

■ Respondent nevertheless contends that the board did not afford him an adequate opportunity to present evidence of reasonable accommodation to allow him to practice medicine limited to IPM and that the disciplinary proceeding itself did not provide an adequate forum to consider all of the options for reasonable accommodation. Initially, we note that the board acted in part upon evidence of past unprofessional conduct, which reasonable accommodation cannot change. However, assuming, without deciding, that the ADA requires public entities to provide adequate opportunity to address reasonable accommodation of an individual's disability in disciplinary proceedings, we conclude that the board's proceeding here provided that opportunity.

The ALJ conducted an eight-day hearing on the inquiry panel's charges of unprofessional conduct. Respondent was permitted ample opportunity to present evidence and argument, including his position that he had voluntarily ceased practicing surgical anesthesia, but with certain accommodation, he could safely practice IPM. As previously noted, the ALJ and the board substantively considered the issue of reasonable accommodation, and the ALJ accepted respondent's position in part, but the board's ultimate finding that respondent is not a qualified individual with a disability is supported by substantial evidence.

### C.

■ For the same reasons, we reject respondent's contention that the board's decision is not entitled to deference because neither it nor the ALJ conducted a full, fair, and candid evaluation of the issue of reasonable accommodation. *See Wong v. Regents of the Univ. of Calif., supra* (decision of public entity that fails carefully to evaluate reasonable accommodation is not entitled to deference upon review).

Respondent has not alleged any procedural irregularity or cited any evidence of bias on the part of the hearing panel, and we have found none. *See deKoevend v. Bd. of Educ.,* 688 P.2d 219 (Colo.1984)(actions of administrative board are entitled to presumption of regularity). To the contrary, the written decisions by the board and the ALJ amply illustrate a full and fair review of the charges against respondent, with particular consideration of reasonable accommodation that respondent contends would permit him safely to practice IPM.

Notwithstanding respondent's contrary argument, while the ALJ and the board were required to include findings and conclusions to support their decisions on the material issues, that analysis need not be exhaustive. The ALJ and the board made reference to evidence that each found persuasive. They were not required to make findings as to respondent's contrary evidence concerning each disputed issue. *See Sundance Hills Homeowners Ass'n v. Bd. of County Comm'rs,* 188 Colo. 321, 534 P.2d 1212

(1975); *Ross v. Denver Dep't of Health & Hosps.,* 883 P.2d 516 (Colo.App.1994)(no requirement that findings be exhaustive).

### II.

Respondent next contends the board's conclusion—that he provided substandard care when he caused pneumothoraces in certain patients—was erroneous as a matter of law. We disagree.

■ The nature and existence of a standard of practice must be established by expert testimony. We will uphold the board's finding of an applicable standard of practice if it has a reasonable basis in law and is supported by substantial evidence. *Colo. State Bd. of Med. Exam'rs v. McCroskey,* 880 P.2d 1188 (Colo.1994).

■ Here, the board found that respondent had caused three pneumothoraces during IPM procedures. The board based its finding on testimony by an expert in the field who opined that respondent had provided substandard care when he caused his patients to suffer pneumothoraces. Hence, the existence of a standard of practice was established through the expert, and the board did not create such a standard from its own knowledge.

Relying upon *Napier v. Northrum,* 264 Ark. 406, 572 S.W.2d 153 (1978), and noting that pneumothoraces are recognized complications of IPM procedures, respondent nevertheless contends that the evidence was insufficient to support the finding that the mere occurrence of these pneumothoraces established substandard care. We disagree.

In *Napier,* the court concluded that expert testimony regarding the occurrence of a pneumothorax was insufficient by itself to establish that the treating physician had acted negligently. There, an expert had opined that the patient had received proper care and that there was no wrongdoing on the part of the physician.

Here, in contrast, the expert concluded that respondent had failed to observe the standard of care based on multiple occurrences of the pneumothoraces in a relatively small number of IPM procedures. The expert

also based his opinion on the fact that the pneumothoraces occurred during the same period as two instances when respondent fell asleep while administering anesthesia during surgery. Further, the expert cited his experience working with physicians suffering from some type of disability and opined that an increased rate of complications frequently resulted under such conditions, which, in his opinion, had also occurred here.

All of these bases were cited by the ALJ and by the board as supporting the finding that respondent caused the pneumothoraces and that these occurrences were below the applicable standard of care. Because these findings are supported by substantial evidence, we will not disturb them. *See Colo. State Bd. of Med. Exam'rs v. McCroskey, supra.*

### III.

■ Respondent contends that the board erred in determining that he committed an act of unprofessional conduct when he touched a female patient's breast during surgery on her knee. We disagree.

Engaging in sexual contact with a patient in the course of care constitutes unprofessional conduct for which a physician is subject to disciplinary action. Section 12–36–117(1)(r), C.R.S.2001. Sexual contact is defined as the knowing touching of a person's intimate parts, including the breasts, for the purpose of sexual arousal, gratification, or abuse. *See* § 18–3–401(2), (4), C.R.S.2001.

The ALJ and the board found that respondent touched the patient's breast for the purpose of sexual abuse. The ALJ determined, and we concur, that "abuse" in this instance includes immoderate or improper use. *See Black's Law Dictionary* 10 (6th ed.1990).

Respondent asserts that there was no evidence of knowing touching for the purpose of abuse. We disagree.

Substantial evidence supports the finding that respondent's touching of the victim's breast was knowingly performed and was an immoderate or improper use. Respondent asked a rhetorical question during surgery whether the patient had breast implants,

and, following this question, he squeezed her bare breast with his hands. The evidence negated any medical purpose for this touching, which was otherwise a highly inappropriate act that exploited the patient's vulnerability while under sedation.

This conduct meets the requirements of a knowing touching for purposes of abuse. Hence, we reject this contention.

We likewise reject respondent's assertion that the sexual contact charge was barred by the statute of limitations applicable to civil claims for sexual assault or by the doctrine of laches.

■ Statutes of limitation applicable to the commencement of civil and criminal proceedings do not apply to the institution of administrative disciplinary proceedings. *Colo. State Bd. of Med. Exam'rs v. Jorgensen,* 198 Colo. 275, 599 P.2d 869 (1979). We therefore reject this contention.

■ ■ The doctrine of laches is an affirmative defense requiring a showing that unconscionable delay in enforcing rights has prejudiced the party against whom relief is sought. Whether the elements of the doctrine are proved essentially presents a question of fact to be determined upon the evidence in the case. *Montezuma Cty. Dep't of Soc. Servs. v. Laner,* 937 P.2d 903 (Colo.App. 1997).

■ Here, the ALJ rejected respondent's contention, finding no evidence to support the claim that the board had failed to exercise diligence in bringing the sexual contact charge. *See City of Thornton v. Bijou Irrigation Co.,* 926 P.2d 1 (Colo.1996). Respondent has not called to our attention any evidence to dispute this finding, and accordingly we will not disturb it on review.

### IV.

■ Respondent contends that the inquiry panel's recommendation that he could continue practicing IPM under certain conditions, which the ALJ adopted, constituted a judicial admission that bound the board in its determination of sanctions. We disagree.

██ For disciplinary proceedings, the board is divided into two panels, each of which is empowered to act as either an inquiry or a hearings panel. If a case that is referred to one panel for investigation results in the filing of formal charges, the case must then be referred to the other panel—or an ALJ—for final hearing and determination of the charges. Section 12–36–118(1), C.R.S. 2001; *Colo. State Bd. of Med. Exam'rs v. McCroskey, supra; People ex rel. Woodard v. Brown,* 770 P.2d 1373 (Colo.App.1989). In any such proceeding, the inquiry panel and the hearings panel operate independently and are represented by separate counsel. *People ex rel. Woodard v. Brown, supra.*

██ This statutory scheme demonstrates that the hearings panel was not bound by any admissions or stipulations made by the inquiry panel. In addition, the inquiry panel's recommendations with respect to sanctions constituted a legal position and not an evidentiary fact that is subject to judicial admission. *See Holiday Acres Prop. Owners Ass'n v. Wise,* 998 P.2d 1106 (Colo.App.2000).

### V.

██ We reject respondent's assertion that in deciding to revoke his license, the board incorrectly set aside or ignored findings of the ALJ. The record shows that the board did not reject any of the ALJ's evidentiary findings or conclusions, but rather affirmed and adopted them in their entirety. The board deviated from the ALJ's order only in its determination to revoke respondent's license rather than to permit him to practice IPM under certain conditions.

Respondent concedes that, in its review of an initial determination by an ALJ, the board may modify or set aside any recommended sanction and impose its own sanction in conformity with the facts and the law. Sections 12–36–118(1)(d), (5)(g)(III), 24–4–105(15)(b), C.R.S.2001; *Colo. State Bd. of Med. Exam'rs v. Hoffner,* 832 P.2d 1062 (Colo.App.1992).

██ The board is afforded great discretion in determining the appropriate sanction for unprofessional conduct, and its determination must be upheld on review unless it bears no relation to the conduct, is a gross abuse of discretion, or is manifestly excessive in relation to the needs of the public. In this regard, a reviewing court may not substitute its judgment for that of the board as to what constitutes appropriate sanctions. *Colo. State Bd. of Med. Exam'rs v. Hoffner, supra; see also Colo. State Bd. of Med. Exam'rs v. McCroskey, supra.*

Respondent contends that the board's actions in this instance were manifestly excessive in relation to the needs of the public. We conclude that the sanction imposed conformed to the facts and the law of the case.

In particular, we note the ALJ's finding, adopted by the board, that the evidence received at hearing established that respondent was not safe to practice either surgical anesthesia or IPM. Additionally, the board noted the incurable and progressive nature of respondent's disability, the fact that certain manifestations of his disorder that threaten patient safety can go undetected even under close monitoring, and his history of denial and noncompliance with treatment.

The hearings panel is required, as its first priority, to consider such sanctions as are necessary to protect the public. Section 12–36–118(5)(g)(III). We conclude that the sanction of license revocation was not manifestly excessive in relation to the need to ensure public safety.

### VI.

For all of the reasons previously set forth, we reject respondent's final contention that the board's order is a denial of statutory right, contrary to law, arbitrary and capricious, and an abuse of discretion. *See* § 24–4–106(7), C.R.S.2001; *Lawley v. Dep't of Higher Educ.,* 36 P.3d 1239 (Colo.2001); *Colo. Ass'n of Pub. Employees v. Colo. Dep't of Pers.,* 991 P.2d 827 (Colo.App.1999).

The order is affirmed.

Judge METZGER and Judge WEBB concur.